**V. L. BITTLE, Winton Roy Martin and Lois Irene Martin, Plaintiffs In Error,**

v.

**Frederick HEIM, Defendant In Error.**

**No. 36591.**

Supreme Court of Oklahoma.

May 31, 1955.

Richard E. Romang, Enid, for plaintiffs in error.

Simons, Simons, Mitchell, Headrick & Mitchell, Enid, for defendant in error.

CORN, Justice.

On December 3, 1953, Frederick Heim as plaintiff obtained a judgment against Winton Roy Martin and Lois Irene Martin for $5,325. On the 19th day of May, 1954, the sheriff of Garfield County levied an execution on a 1947 Cadillac and a 1951 model Plymouth. On May 22, 1954 Winton Roy Martin and Lois Irene Martin filed their motion to quash the levy of execution. Therein it was alleged that the Cadillac Sedan was not the property of defendants; that the Plymouth Sedan was mortgaged for $1,000 to V. L. Bittle and that Frederick Heim had failed to comply with the requirements of 46 O.S.1951, § 68, and that the levy thereon was invalid. The defendants asked that the levy on said vehicles be quashed.

Thereafter by agreement of all the parties V. L. Bittle intervened without any written pleading and set up his claim of

ownership to the Cadillac Sedan. The trial court, after a full and complete hearing denied the motion to quash and held against the intervenor. From this order the said Winton R. Martin and Lois Irene Martin and V. L. Bittle have appealed.

V. L. Bittle testified that he is the owner of the 1947 Model Cadillac Sedan; that he lives in Childress, Texas and is the brother-in-law of Winton Roy Martin. He introduced in evidence his certificate of title dated January 28, 1954, but stated that he did not know the A. B. Martin who applied for the license issued under said date; that he knows that Winton Roy Martin goes by the nickname of Abe Martin. He testified that he bought the automobile in January and paid cash for it but did not remember the name of the man who sold it to him; that the automobile has never been out of Enid, Oklahoma, so far as he knows and has been in the possession of Winton Roy Martin since it was bought. He testified that he delivered the car to Martin with directions to sell the same. He testified that on November 6, 1953, he took a mortgage on the Plymouth Sedan. This mortgage was filed February 2, 1954; that the mortgage was given to secure a loan of $1,000 evidenced by a check to Winton Roy Martin dated November 3, 1953; that $100 has been paid on said mortgage; that he did not know there was a judgment against Winton Roy Martin and doesn't remember when he found this out.

Winton Roy Martin testified that he obtained the Cadillac automobile from Bittle sometime in January 1954; that at the date it was delivered to him the certificate of title was not given to him; that he does not know the A. B. Martin who applied for the license on January 28, 1954; that he did not apply for the license and did not sign the application for the license for the Plymouth and does not know who signed the license for either automobile; that he executed a mortgage on the Plymouth automobile to V. L. Bittle to secure a loan of $1,000.

Mrs. Le Roy Brandon testified that she is the wife of the automobile tag agent at Covington in Garfield County and employed in his office; that on the 28th day of January, 1954 there was a transfer of title of the Cadillac automobile from A. B. Martin to V. L. Bittle; that at the same time and place the same person applied for a license for the Plymouth automobile; that the application for the Cadillac was signed by A. B. Martin and that of the Plymouth by W. R. Martin; that she knows they were signed by the same party because they are in the same handwriting and have consecutive numbers.

Chris Sarras testified that he secured the Cadillac from his father and had his father transfer title to A. B. Martin; that A. B. Martin had no connection with W. R. Martin; that he knows W. R. Martin goes under the name of Abe Martin. His idea in having his father transfer the title to A. B. Martin was to prevent liability in case of a wreck; that he selected the name at random and could have used A. B. Jones, A. B. Johnson or anything; that he sold the Cadillac to Bittle in January; that on the date the license was purchased Russell Hampton bought the license for him because he was getting two other tags and that at the same time Russell Hampton bought the license for the Plymouth. Louis Sarras, father of Chris Sarras, testified that he transferred the title of the Cadillac automobile to A. B. Martin on request of his son who told him he had sold the car.

Russell Hampton testified that he and Chris Sarras and W. R. Martin were bellboys at the Youngblood Hotel in Enid, Oklahoma; that he was making a trip to Covington and that Chris Sarras went with him and they were outside the tag office or inside the tag office when Chris Sarras handed him the money to transfer title of the Cadillac automobile and that he applied for the license dated January 28, 1954; that at the same time he bought his own tag for the Plymouth automobile and signed the name of A. B. Martin and W. R. Martin to the applications.

It is first argued that the court erred in refusing to quash the levy for the reason that there was a failure to comply

with the provisions of 46 O.S.1951 § 68. That provision is as follows:

"Before the property is so taken the officer, on execution, or attachment creditor, must pay or tender to the mortgagee or record assignee, the amount of the mortgage debt and interest, or must deposit the amount thereof with the County Treasurer, payable to the order of the mortgagee or record assignee. In the event the attachment or execution levied on such property is defeated or for any reason fails, and the attachment or execution lien is held not good, and such deposit has been made with the County Treasurer, the party procuring the issuance and levy of said attachment or execution shall be subrogated to all rights of the mortgagee or record assignee, in and to said property."

The defendants and intervenor cite Beatrice Creamery Co. v. Golden, 129 Okl. 86, 263 P. 458, and Moore v. Calvert, 8 Okl. 358, 58 P. 627, and related cases. These cases are authority for the rule that a valid mortgage must be paid or tender made in accordance with the statute before a levy of execution can be effective. We think it unnecessary to review the evidence in support of the falsity of the claim of V. L. Bittle. The testimony of Winton Roy Martin and V. L. Bittle in many respects is vague and indefinite as to the circumstances surrounding the loan. The record discloses that although it is alleged that the mortgage was executed November 6, 1953, it was not recorded until February 2, 1954, long after the judgment was entered for Heim. An examination of the mortgage shows that it was executed by Winton Roy Martin and Lois Irene Martin and witnessed by Katie Parker and Tom R. Preston. However, the evidence further discloses that at the time it was offered for filing at the county clerk's office Katie Parker was the only witness; that thereafter Tom R. Preston affixed his signature to the same mortgage as a witness and it was then returned to the county clerk by V. L. Bittle after he had received the information from the county clerk that it could not be filed because there was only one witness.

Under the provisions of 46 O.S. 1951 § 63, a chattel mortgage must have two attesting witnesses unless it is acknowledged as therein provided. Poage v. Nix County Clerk, 186 Okl. 388, 98 P.2d 610; First National Bank v. Devore, 110 Okl. 283, 234 P. 734.

Since the mortgage was not executed and filed as required by the statute there was no error in holding that the levy could be made without complying with the provisions of 46 O.S.1951 § 68.

We must likewise sustain the finding of the trial court as to the ownership of the Cadillac automobile. The evidence discloses that the automobile was never out of Garfield County or out of the possession of W. R. Martin. The court was warranted in finding from the evidence that A. B. Martin, Abe Martin and Winton Roy Martin were the same person and that the automobile was owned by Winton Roy Martin and remained in his possession until levied upon; that on January 28, 1954, Winton Roy Martin, using the name of A. B. Martin, caused title to be issued to V. L. Bittle; that this was done to evade liability on the judgment against Winton Roy Martin and Lois Irene Martin.

The testimony of the witnesses relating to the transfer of the title to the Cadillac contained inherent weaknesses which under the circumstances justified the court in finding the testimony improbable. In such case it has been held that the testimony even though not contradicted does not have to be accepted. Hattabaugh v. B. H. & W. Mining Co., 204 Okl. 464, 230 P.2d 923. In McClendon v. Kennedy, 182 Okl. 153, 77 P.2d 15, 16, it is stated:

"'Undisputed credible testimony not inherently improbable is usually binding upon the court or jury, but evidence is not regarded as undisputed if it is at variance with facts and circumstances in the case or reasonable

inferences to be drawn therefrom or .from.other evidence.' "

The order denying the motion to quash the levy on execution is affirmed.

JOHNSON, C. J., and WILLIAMS, V. C. J., WELCH, ARNOLD, HALLEY, BLACKBIRD and JACKSON, JJ., concur.