## FISHER v. FRIEDMAN & Co.

1. **Mortgage**: WRONGFUL CONVERSION: DAMAGES. Where it was provided, in a mortgage executed upon a stock of merchandise, that the mortgagor should not sell or dispose of the mortgaged property, and a party with notice of the mortgage purchased a part of the same, he was held to be liable in damages to the mortgagee for the wrongful conversion of the merchandise purchased by him.

*Appeal from Pottawattamie District Court.*

THURSDAY, DECEMBER 13.

Till & Cohn were manufacturers of cigars at Brownsville, Nebraska. They were indebted to the plaintiff, and on the 20th day of June, 1876, to secure said debt, they executed a chattel mortgage to the plaintiff upon their stock in trade. The mortgage was duly acknowledged and filed for record.

On the 25th day of June, 1876, Till & Cohn sold to the defendants a quantity of cigars, being part of said mortgaged property, and of the value of $744.

This action was brought to recover damages for the wrongful conversion of the goods so purchased by the defendants. It is alleged that defendants purchased with full knowledge of the ownership of plaintiff by virtue of said chattel mortgage.

There was a trial by the court, and a judgment for the plaintiff. Defendants appeal.

*Clinton, Hart & Brewer*, for appellants.

*E. R. Paige*, for appellee.

ROTHROCK, J. The chattel mortgage in question was made

1. MORTGAGE: wrongful conversion: damages.

and recorded in the State of Nebraska upon property in that State. By the statutes of Nebraska it is provided that:

" Every sale made by a vendor of goods and chattels in his possession, or under his control, and every assignment of goods and chattels, by way of mortgage, or security, or upon any condition whatever, unless the same be accompanied by an im-

mediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged, or assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith, and shall be conclusive evidence of fraud, unless it shall be made to appear on the part of the person claiming under such sale, or assignment, that the same was made in good faith and without any intent to defraud such creditors or purchasers."

The plaintiff testified upon the trial as follows: " These notes were given for an indebtedness due me from Till & Cohn, for goods sold to them, and there is a balance of four hundred and sixty-five dollars unpaid, and due on them. The mortgagors had no right at all to sell or dispose of any of the mortgaged property, and.I so expressed it to them. They so understood and so expressed themselves to me. The mortgage was given with the understanding that I would furnish them ·more stock and enable them to carry on their business, and they held the mortgaged property for me as my security."

The fact that the co-partnership of Till & Cohn was justly indebted to the plaintiff in the sum named is not questioned. This in connection with the evidence that the mortgagors had no right to sell or dispose of any of the mortgaged property was, we think, a sufficient *prima facie* showing that the mortgage was made in good faith and without any intent to defraud creditors or purchasers. The mortgage itself contained a provision prohibiting the sale of any part of the mortgaged property. It was then incumbent upon the defendants to overcome this *prima facie* showing by proper evidence.

To do this, intervenors were introduced as witnesses and testified that at the time the mortgage was executed it was agreed between the parties thereto that Till & Cohn should proceed with their business, and sell the mortgaged goods in the ordinary course of trade. There was, therefore, a conflict in the evidence as to the authority to sell. The plaintiff testified there was no such authority given, and he was corroborated by the express provisions of the mortgage. The finding that there was no such authority is, therefore, not without support in the evidence,

and we cannot say that the court was not justified in the conclusion reached. It will be observed that the defendants made their purchase in five days after the mortgage was made; and it appears in evidence that when they made the purchase they had actual notice of the mortgage.

Counsel for the appellants argue the case upon the theory that the mortgagors had power to sell the mortgaged property, and they cite the case of *Tallon v. Ellison & Sons*, 3 Neb., 63, which holds that under the statutes of that state a mortgage of goods and chattels, with possession and power of sale in the mortgagor, is void as against creditors and subsequent purchasers.

This mortgage having been made in Nebraska upon property in that state, is of course subject to the laws there in force, and the courts of other states, in a proper case made, will follow the interpretation given to the statutes of any state by the courts thereof. But, as we have seen there was no error in finding that there was no power of sale in the mortgagors, the rule announced in *Tallon v. Ellison & Sons*, *supra*, can have no application in this case.

AFFIRMED.